UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------
SHAWN COLEMAN,

                          Petitioner,            **MEMORANDUM & ORDER**
                                                 12-CV-477 (MKB) (ARL)
             v.

PAUL CHAPPIUS, *Superintendent of Elmira
Correctional Facility*,

                          Respondent.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Petitioner Shawn Coleman, proceeding *pro se*, brings the above-captioned petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody

in violation of his federal constitutional rights.  (Pet. for Writ of Habeas Corpus ("Pet.") 1,

Docket Entry No. 1.)[1]  Petitioner's claims arise from a judgment of conviction following a jury

trial in the Supreme Court of New York State, Nassau County, on charges of second-degree

robbery, third-degree robbery, and resisting arrest.  (Tr. of Proceedings before the Hon. Donald

DeRiggi dated Feb. 7, 2003 ("Tr.") 1059:12–16, annexed to Resp't Answer as Ex. 2, Docket

Entry No. 7-2.)  Petitioner was sentenced to a determinate term of fifteen years on the second-

degree robbery conviction, a concurrent indeterminate term of three and one-half to seven years

on the third-degree robbery conviction, and a term of one year on the resisting-arrest conviction.

(Tr. of Sentencing Proceedings before the Hon. Donald DeRiggi dated May 5, 2003 ("Sent'g

Tr.") 9:7–15, annexed to Resp't Answer as Ex. 3, Docket Entry No. 7-3.)  Petitioner appealed his

---

        [1]  Because the petition and Petitioner's four motions pursuant to New York Criminal
Procedure Law § 440.10, discussed *infra*, are not consecutively paginated, the Court refers to the
page numbers assigned by the electronic filing system.

conviction to the New York Supreme Court Appellate Division, Second Department ("Appellate Division"). *People v. Coleman*, 829 N.Y.S.2d 200, 200 (App. Div. 2007). The Appellate Division vacated Petitioner's conviction for third-degree robbery but affirmed the judgment of conviction as modified. *Id.* at 201.

In the instant petition, Petitioner seeks a writ of habeas corpus on the following four grounds: (1) denial of the right to retain counsel of his choosing; (2) erroneous application of New York County Law § 722 (governing appointment of counsel); (3) failure to conduct a *Wade* hearing[2] with respect to the in-court identification of Petitioner by Curtis Ericsson; and (4) denial of the right to the effective assistance of trial counsel because his attorney both (a) failed to submit an alibi notice and (b) failed to pursue a line-up identification. (Pet. 5–10.) For the reasons discussed below, the Court denies the petition.

## I. Background

### a. Procedural background

On October 11, 2004, while Petitioner's direct appeal was pending before the Appellate Division, he filed his first of four motions in Nassau County Court, pursuant to New York Criminal Procedure Law § 440.10, to vacate his conviction, which the county court denied on March 30, 2005. (First 440 Motion ("First 440 Motion") 1, 70–71, annexed to Resp't Answer as Ex. 5, Docket Entry No. 7-5.) Petitioner appealed the denial of the First 440 Motion to the Appellate Division, which granted leave to appeal and consolidated the 440 appeal with the direct appeal from Petitioner's judgment of conviction. (*Id.* at 101, 105.) In an order dated February 6, 2007, the Appellate Division vacated Petitioner's conviction for third-degree robbery

---

[2] A *Wade* hearing is a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to determine the admissibility of pretrial identifications.

and affirmed the judgment of conviction as modified. *Coleman*, 829 N.Y.S.2d at 201.  By separate order dated the same day, the Appellate Division affirmed the order denying the First 440 Motion. *People v. Coleman*, 827 N.Y.S.2d 878, 878–79 (App. Div. 2007).  Petitioner subsequently sought leave to appeal to the New York Court of Appeals from both the order partially affirming his judgment of conviction and the order denying his First 440 Motion and leave to appeal was denied on July 31, 2007. *People v. Coleman*, 9 N.Y.3d 864, 864 (2007).

On November 14, 2007, Petitioner filed a second 440 motion to vacate his conviction. (Second 440 Motion ("Second 440 Motion"), annexed to Resp't Answer as Ex. 7, Docket Entry No. 7-7.)  The county court denied the Second 440 Motion on December 24, 2007, and the Appellate Division denied Petitioner's motion for leave to appeal on March 13, 2008.  (*Id.* at 168–69, 208); *People v. Coleman*, No. 2008-1080, 2008 WL 660741, at *1 (N.Y. App. Div. Mar. 13, 2008).

On July 25, 2008, Petitioner filed a third 440 motion to vacate his conviction.  (Third 440 Motion ("Third 440 Motion"), annexed to Resp't Answer as Ex. 8, Docket Entry No. 7-8.)  The county court denied the Third 440 Motion on July 8, 2009, and the Appellate Division denied Petitioner leave to appeal the denial on January 7, 2010.  (*Id.* at 91–92, 103.)

 On February 24, 2011, Petitioner filed a fourth 440 motion to vacate his conviction, which the county court summarily denied on December 20, 2011.[3]  (Fourth 440 Motion ("Fourth 440 Motion") 69–70, annexed to Letter Curing Defect dated May 18, 2012, as Ex. 9, Docket Entry No. 8-1.)

---

[3] There is no information indicating that Petitioner appealed the denial of his Fourth 440 Motion.

Finally, Petitioner twice moved in the Appellate Division for a writ of error *coram nobis*, claiming that his appellate counsel was ineffective, and was twice denied. *People v. Coleman*, 929 N.Y.S.2d 761, 762 (App. Div. 2011); *People v. Coleman*, 902 N.Y.S.2d 415, 415 (App. Div. 2010).

### b.   Factual background

#### i.   Incident and arrest

On December 18, 2000, in the hallway of a Best Western Hotel in Hempstead, Nassau County, New York, Petitioner and an accomplice, Judah Abraham, threatened to kill Curtis Ericsson and forced him into his room while holding him in a headlock with a sharp object to his back.  (Tr. 352:6–16, 354:19–24.)  They stole money and other articles from Ericsson's person and from his room, pushed him to the floor, and placed the bed on top of him.  (*Id.* at 357:24–358:11, 359:5–7.)  A video surveillance camera captured photographs of Petitioner in the hotel lobby.  (*Id.* at 359:17–363:19.)

On December 31, 2000, Petitioner was apprehended in Rockville Centre, New York, following an incident at a motel, a chase, and a struggle with police.  (*Id.* at 441:12–447:24, 471:12–21.)  Petitioner was arrested and signed a written statement confessing to his involvement in the December 18, 2000 robbery of Ericsson.  (*Id.* at 546:14–548:5.)

#### ii.   Charges and trial

For the crimes committed on December 18, 2000, Petitioner was charged with first-degree robbery pursuant to New York Penal Law § 160.15(3) and second-degree robbery pursuant to New York Penal Law § 160.10(1).  (Resp't Answer ¶ 7, Docket Entry No. 7.)  For the crimes committed on December 31, 2000, Petitioner was charged with two counts of attempted second-degree robbery pursuant to New York Penal Law §§ 110.00, 160.10(1)–(2)

4

and resisting arrest pursuant to New York Penal Law § 205.30.  (*Id.*)  The trial proceedings were held in Nassau County Court before the Honorable Donald DeRiggi (the "Trial Court").  (Tr. 1.)

On January 10, 2001, the Nassau County Legal Aid Society was relieved as assigned counsel, and Richard Reisch appeared for Petitioner as retained counsel.  (Resp't Answer ¶ 8.)  On March 14, 2002, because the Trial Court believed that Petitioner could no longer afford to pay Reisch, the court assigned Reisch to represent Petitioner under New York County Law § 722, Nassau County's assigned counsel plan.  (Tr. of Prelim. Proceedings before the Hon. Donald DeRiggi dated Nov. 14, 2002 ("Prelim. Tr.") 3:21–23, annexed to Resp't Answer as Ex. 1, Docket Entry No. 7-1.)[4]

On November 14, 2002, Reisch sought to be relieved as counsel.  (*Id.* at 5:11–13.)  Although Petitioner did not object to Reisch's petition to withdraw as counsel, stating that he had lost confidence in Reisch and refused to pay him additional money, (*id.* at 5:14–6:3), the Trial Court determined that there was "no legal basis for the relief of counsel" and denied the request, (*id.* at 6:7–6:12).

At trial on February 4, 2003, Petitioner moved the Trial Court to relieve Reisch as his attorney.  (*Id.* at 8:25–9:8.)  Petitioner stated that he wanted to proceed *pro se* and that he had another attorney that would appear to represent him the next day.  (*Id.* at 8:25–9:22.)  The Trial Court denied Petitioner's request to proceed *pro se* as untimely.  (*Id.* at 10:18–21.)  No new attorney ever appeared to represent Petitioner.  (*See id.*)

On February 5, 2003, several jurors asked to be excused from jury duty after they witnessed Petitioner reading their juror questionnaires.  (*See id.* at 14:24–15:4.)  Petitioner's

---

[4]  Because the Transcript of Preliminary Proceedings is not consecutively paginated, the Court refers to the page numbers assigned by the electronic filing system.

counsel requested a mistrial, which was granted, and a new trial commenced immediately.  (*Id.* at 13:22–15:14.)

At the new trial, which commenced on February 5, 2003, Petitioner was represented by Reisch ("Trial Counsel").  (Tr. 2:9–10.)  Trial Counsel called Nicole Hackett, Petitioner's then-girlfriend and later wife, as a defense witness.  (*Id.* at 659:13–660:15.)  Petitioner and Hackett believed that Hackett would be called as an alibi witness, but Trial Counsel apparently did not intend for Hackett to offer alibi testimony, having never served a notice of alibi, which resulted in the Trial Court disallowing alibi testimony from Hackett.  (*See id.* at 657:23–658:25.)

### iii.   Jury verdict and sentence

On February 19, 2003, the jury found Petitioner not guilty of first-degree robbery but convicted him of second-degree robbery and third-degree robbery in connection with the December 18, 2000 incident.  (Tr. 1059:9–20.)  With regard to the December 31, 2000 incident, the jury found Petitioner guilty of resisting arrest but was unable to reach a verdict on the related attempted robbery counts, which were later dismissed.  (*Id.* 1065:16–1066:1.)

On May 5, 2003, Petitioner was sentenced to a determinate term of imprisonment of fifteen years on the second-degree robbery conviction, a concurrent indeterminate term of three and one-half to seven years on the third-degree robbery conviction, and a term of one year on the resisting-arrest conviction.  (Sent'g Tr. 10:1–15.)

### iv.   Direct appeal

Petitioner appealed his conviction to the Appellate Division, arguing that: (1) Trial Court erred in excluding a hearsay statement made by non-testifying codefendant Judah Abraham that exculpated Petitioner; (2) Trial Court erred in refusing to give a voluntariness instruction to the jury with respect to Petitioner's confession; (3) Trial Counsel was ineffective for failing to serve

an alibi notice; (4) Trial Court abused its discretion in failing to admit alibi testimony notwithstanding the lack of notice; (5) the People, on their own initiative, should have offered to the Trial Court the grand jury testimony of the alleged alibi witness in order to establish the relevance of the alleged alibi testimony; (6) Petitioner's sentence for third-degree robbery should be dismissed as an inclusory concurrent count of second-degree robbery; and (7) Petitioner's sentence was excessive. (Direct Appeal, annexed to Resp't Answer as Ex. 4, Docket Entry No. 7-4.) In a *pro se* supplemental brief, Petitioner also argued that Trial Counsel was ineffective for failing to assert his rights under New York Criminal Procedure Law §§ 180.80 (requiring the release of a defendant from custody upon failure to timely dispose of a felony complaint or commence a hearing thereon), 190.80 (requiring the release of a defendant upon failure of timely grand jury action), and 30.30 (asserting the right to a speedy trial), and that the Trial Court improperly denied his request for new counsel. (Direct Appeal 107–11.)

On February 6, 2007, the Appellate Division vacated Petitioner's third-degree robbery conviction, rejected all of Petitioner's other claims, and otherwise affirmed the Trial Court's judgment of conviction. *Coleman*, 829 N.Y.S.2d at 201. The Appellate Division rejected Petitioner's claim that the Trial Court deprived him of the right to counsel of his choice because it concerned matters outside the record and could not be reviewed on direct appeal. *Id.*

### v. First 440 Motion

Petitioner moved the county court for an order vacating his judgment of conviction on the ground that he was denied effective assistance of counsel at trial. Petitioner claimed that his Trial Counsel (1) improperly waived his rights under New York Criminal Procedure Law §§ 180.80 and 190.80; (2) refused to discuss the issues of the case with him; (3) failed to submit a timely notice of alibi; (4) failed to move for exclusion of any in-court identification; (5) failed

to adopt a defense of misidentification; (6) failed to counter the People's impeachment of Hackett; and (7) failed to place the codefendant's statement exculpating Petitioner before the jury via a third party.  (First 440 Motion 1–13.)  On March 30, 2005, the county court denied Petitioner's First 440 Motion.  (*Id.* at 70–71.)

On June 28, 2005, the Appellate Division granted Petitioner permission to appeal the March 30, 2005 order denying his First 440 Motion.  (*Id.* at 101.)  In his appeal, Petitioner argued that Trial Counsel had failed to file a timely alibi notice and that the county court should have conducted a hearing on Petitioner's motion to determine if his Trial Counsel's alleged errors denied Petitioner a fair trial.  (*Id.* at 105–11.)  Petitioner also made an additional argument to the Appellate Division that he had not made to the county court below that he had been denied the right to retain counsel of his own choosing.  (*Id.* at 112–13.)

On February 6, 2007, the Appellate Division denied Petitioner's appeal and affirmed the judgment of the county court denying Petitioner's First 440 Motion for vacatur of the Trial Court's February 19, 2003 judgment.  *Coleman*, 827 N.Y.S.2d at 878.  The Appellate Division held that Petitioner's claims were unsubstantiated and conclusory and that the county court properly denied Petitioner's motion without a hearing.  *Id.* at 878–79.  With regard to Petitioner's claim that he was denied the right to retain counsel of his choosing, the Appellate Division

denied it because the claim "was not raised in the underlying motion papers and therefore [was] not properly before the [Appellate Division] on appeal." *Id.* at 879.

Petitioner sought leave to appeal to the New York Court of Appeals but was denied leave on July 31, 2007. *Coleman*, 9 N.Y.3d at 864. Petitioner did not seek a writ of certiorari from the United States Supreme Court.

### vi.  Second 440 Motion

On November 14, 2007, Petitioner filed a Second 440 Motion in county court to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. (Second 440 Motion 2.) Petitioner again asserted his claim of ineffective assistance of Trial Counsel and added that the Trial Court improperly denied his request to retain new counsel. (*Id.* at 4–5.)

On December 24, 2007, the county court denied Petitioner's motion, holding that Petitioner should have raised his claim that he was denied the right to obtain counsel of his choosing on direct appeal[5] and that his failure to do so warranted summary denial of his motion pursuant to New York Criminal Procedure Law § 440.10(2)(c). (*Id.* at 168–69.)

On March 13, 2008, the Appellate Division denied Petitioner's application for leave to appeal. (*Id.* at 208); *Coleman*, 2008 WL 660741, at *1.

### vii.  Third 440 Motion

On July 25, 2008, Petitioner filed a Third 440 Motion to vacate judgment pursuant to New York Criminal Procedure Law § 440.10. (Third 440 Motion 3.) He again argued that the Trial Court had refused to allow him to retain counsel of his own choosing. (*Id.* at 4.) Petitioner argued that his attorney's status changed from retained counsel to assigned counsel due to the

---

[5]  The Court notes that Petitioner did raise the claim on direct appeal, but the Appellate Division found that the claim could not be reviewed because it was outside the record. *People v. Coleman*, 829 N.Y.S.2d 200, 201 (App. Div. 2007).

Trial Court's misunderstanding that he was seeking assigned counsel pursuant to New York

County Law § 722 due to financial constraints.  (*See id.*)  On July 6, 2009, the county court held

that Petitioner's motion was procedurally barred pursuant to New York Criminal Procedure Law

§ 440.10 (3)(a), (b), and (c)[6] and that, in any event, the record demonstrated that Petitioner was

not denied the right to retain counsel of his choosing.  (*Id.* at 67–68.)  On January 7, 2010, the

Appellate Division denied Petitioner leave to appeal.  (*Id.* at 103.)

### viii.   Fourth 440 Motion

On February 24, 2011, Petitioner filed a Fourth 440 Motion to vacate judgment pursuant

to New York Criminal Procedure Law § 440.10.  (Fourth 440 Motion 4.)  Petitioner again

claimed that he was denied the effective assistance of Trial Counsel.  (*Id.* at 3.)  On December

19, 2011, the county court summarily denied Petitioner's Fourth 440 Motion pursuant to New

York Criminal Procedure Law § 440.10(3)(b).  (*Id.* at 69–70.)

### ix.   First application for a writ of error *coram nobis*

On June 8, 2008, Petitioner filed an application for a writ of error *coram nobis* claiming

ineffective assistance of appellate counsel regarding his direct appeal.  (*Coram Nobis* Appl.,

annexed to Pet'r's Aff. in Opp'n to Resp't Answer as Ex. B, Docket Entry No. 16-2.)  The

Appellate Division granted Petitioner leave to serve and file a brief on the underlying issue of

whether he had been denied the right to retain counsel of his choosing.  *People v. Coleman*, 863

N.Y.S.2d 601, 601 (App. Div. 2008).  The Appellate Division denied Petitioner's application for

---

[6]  Criminal Procedure Law § 440.10(3) provides that a court may deny a motion to vacate a judgment of conviction when: (a) even if an adequate basis for review of a ground or issue exists, the defendant unjustifiably failed to adduce the matter prior to sentence or upon appeal; (b) the ground or issue raised was previously determined on the merits; or (c) the defendant was in a position to raise the ground or issue in a previous motion and did not do so.  N.Y. Crim. Proc. Law § 440.10(3)(a)–(c); *Murden v. Artuz*, 497 F.3d 178, 191 (2d Cir. 2007).

a writ of error *coram nobis* with respect to the direct appeal and held that Petitioner had failed to

establish that he was denied effective assistance of appellate counsel. *Coleman*, 902 N.Y.S.2d at

415. On September 17, 2010, the Court of Appeals denied Petitioner's application for leave to

appeal from the order of the Appellate Division. *People v. Coleman*, 15 N.Y.3d 850, 850 (2010)

(mem.).

### x.  Second application for a writ of error *coram nobis*

On March 11, 2011, Petitioner filed a second application for a writ of error *coram nobis*,

again claiming that appellate counsel was ineffective. On September 20, 2011, the Appellate

Division denied Petitioner's application. *Coleman*, 929 N.Y.S.2d at 762. On December 13,

2011, the New York Court of Appeals denied leave to appeal from that order. *People v.*

*Coleman*, 938 N.Y.S.2d 865, 865 (2011) (mem.).

## II.  Discussion

### a.  Standard of review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), an application for a writ of habeas corpus by a person in custody

pursuant to a state court judgment may only be brought on the grounds that his or her custody is

"in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A petitioner is required to show that the state court decision, having been adjudicated on the

merits, is either "contrary to, or involved an unreasonable application of, clearly established

Federal law" or "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." *Id.* § 2254(d)(1)–(2); *see also Shoop v. Hill*, 586

U.S. ---, ---, 139 S. Ct. 504, 506 (Jan. 7, 2019) (per curiam) ("[H]abeas relief may be granted

only if the state court's adjudication 'resulted in a decision that was contrary to, or involved an

11

unreasonable application of,' Supreme Court precedent that was 'clearly established' at the time of the adjudication." (quoting *White v. Woodall*, 572 U.S. 415, 419–20 (2014))); *Kernan v. Hinojosa*, 578 U.S. ---, ---, 136 S. Ct. 1603, 1604 (May 16, 2016) (per curiam); *Hittson v. Chatman*, 576 U.S. 1028, 1028 (2015) (mem.); *Woods v. Donald*, 575 U.S. 312, 313 (2015) (per curiam); *Johnson v. Williams*, 568 U.S. 289, 292 (2013).  "An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'"  *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)); *see also Kernan*, 578 U.S. at ---, 136 S. Ct. at 1606; *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  Under the section 2254(d) standards, a state court's decision must stand as long as "'fairminded jurists could disagree' on the correctness of the . . . decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

For the purposes of federal habeas review, "clearly established law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Glebe v. Frost*, 574 U.S. 21, 24 (2014) (per curiam) ("As we have repeatedly emphasized, however, circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" (quoting 28 U.S.C. § 2254(d)(1))); *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (per curiam) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision.").  A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision (1) is contrary to Supreme Court precedent on a question of law, (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts, or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of

the petitioner's case.  *See Williams*, 529 U.S. at 412–13.  In order to establish that a state court decision is an unreasonable application of federal law, the state court decision must be "more than incorrect or erroneous."  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The decision must be "objectively unreasonable."  *Id.*

A court may also grant habeas relief if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "[S]tate-court factual determination[s] [are not] unreasonable 'merely because [a federal post-conviction court] would have reached a different conclusion in the first instance.'"  *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  Rather, factual determinations made by the state court are "presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Even if "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to'" overturn a state court factual determination.  *Wood*, 558 U.S. at 301 (alteration in original) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).  A court may overturn a state court's factual determination only if the record cannot "plausibly be viewed" as consistent with the state court's fact-finding or if "a reasonable factfinder must conclude" that the state court's decision was inconsistent with the record evidence.  *Rice*, 546 U.S. at 340–41.

### b.   Petitioner's choice-of-counsel claim is procedurally barred

Petitioner claims that he was denied the right to retain counsel of his choosing when he "was forced to trial with the same attorney whom the courts appointed," despite his desire to discharge that attorney.  (Pet. 5.)  Because Petitioner improperly attempted to raise this claim on

direct appeal and failed to properly raise it in his First 440 Motion, this claim is procedurally barred.

"[A] federal court may not review federal claims that were procedurally defaulted in state court — that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 582 U.S. ---, ---, 137 S. Ct. 2058, 2064 (June 26, 2017). "'To qualify as an adequate procedural ground,' capable of barring federal habeas review, 'a state rule must be firmly established and regularly followed.'" *Johnson v. Lee*, 578 U.S. ---, ---, 136 S. Ct. 1802, 1803 (May 31, 2016) (per curiam) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). The Second Circuit has held that New York Criminal Procedure Law § 440.10(3)(c) — which allows a state court to deny a claim in a post-conviction motion if the movant could have, but failed to, raise the same claim in an earlier Article 440 motion — constitutes a state procedural bar sufficiently independent and adequate to bar federal habeas review. *See Murden v. Artuz*, 497 F.3d 178, 191–94 (2d Cir. 2007).

Petitioner's first opportunity to raise this claim was in his First 440 Motion.[7] He failed to do so.[8] When adjudicating his Third 440 Motion, the county court[9] held that New York Criminal

_____

[7] Petitioner initially but improperly raised the choice-of-counsel claim on direct appeal. The Appellate Division rejected the claim without ruling on the merits. *See Coleman*, 829 N.Y.S.2d at 201 ("The defendant's remaining contention, raised in his supplemental *pro se* brief, that the trial court deprived him of the counsel of his choice, refers to a matter that is dehors the record and may not be reviewed on direct appeal." (citing *People v. Andrews*, 813 N.Y.S. 2d 314, 314 (App. Div. 2006))).

[8] Petitioner raised the claim for the first time on appeal from the denial of his First 440 Motion. The Appellate Division refused to consider the claim on its merits because the claim "was not raised in the underlying motion papers and therefore [was] not properly before us on appeal." *People v. Coleman*, 827 N.Y.S.2d 878, 879 (App. Div. 2007).

[9] This Court reviews the county court's decision adjudicating Petitioner's Third 440 Motion because that was the last reasoned decision to consider Petitioner's choice-of-counsel

14

Procedure Law § 440.10(3)(c)[10] barred the claim.[11]  Because the county court held that this independent and adequate state procedural rule barred Petitioner's claim, this Court may not consider the claim on federal habeas review.

### c.   Erroneous application of New York County Law § 722

Petitioner argues that the Court should grant the petition because the Trial Court erred when it assigned him counsel pursuant to New York County Law § 722.  (Pet. 7.)  The Court finds that Petitioner is not entitled to relief based on this claim because the application of state law such as New York County Law § 722 does not implicate his federal constitutional rights and therefore does not present a ground upon which federal habeas relief may be granted.

Federal courts are only authorized to entertain an application for a writ of habeas corpus on behalf of state prisoners on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).  A petitioner seeking habeas relief in federal court faces "the heavy burden of showing that the state-court ruling 'involved an unreasonable application of[] clearly established federal law' or rested on an 'unreasonable determination of the facts.'"

---

claim.  *See, e.g.*, *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000); *Ambers v. Colvin*, No. 16-CV-5326, 2019 WL 3767036, at *11 (E.D.N.Y. Aug. 9, 2019).

[10]  When (as here) a state court denies a claim while citing all three paragraphs of New York Criminal Procedure § 440.10(3), paragraph (3)(c) suffices as a procedural bar.  *See Murden*, 497 F.3d at 191.

[11]  As an alternative holding, the county court also denied Petitioner's choice-of-counsel claim on its merits.  Because a state court's application of a state procedural bar prohibits federal habeas review of a claim even if the state court also denied the claim on its merits, the county court's alternative holding does not lift the procedural bar.  *See Galdamez v. Keane*, 394 F.3d 68, 77 (2d Cir. 2005) ("[W]here a state court explicitly says that a particular claim fails for a procedural reason, but still reaches the merits, that claim remains procedurally barred." (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989))).

*Madison v. Alabama*, 586 U.S. ---, ---, 139 S. Ct. 718, 725 (Feb. 27, 2019) (alteration in original)
(quoting 28 U.S.C. § 2254(d)). The Supreme Court has clearly articulated that a perceived error
of state law is not a ground upon which the writ of habeas corpus may issue. *Estelle v. McGuire*,
502 U.S. 62, 71–72 (1991); *id.* at 67 ("We have stated many times that 'federal habeas corpus
relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)));
*Wright v. Duncan*, 500 F. App'x 36, 38 (2d Cir. 2012) ("A federal habeas court generally does
not review purported errors of state law." (citing *Estelle*, 502 U.S. at 67–68)).

Because the application of New York County Law § 722 is an issue of state law, the
improper application of section 722 is not cognizable on federal habeas review.[12]  *See Baker v.
New York*, 299 F. Supp. 1265, 1266–68 (S.D.N.Y. 1969) (finding a New York County Law § 722
challenge to an earlier version of the law on the basis that petitioners were denied "the services
of counsel of their choice" to be a state law challenge to be determined by the state court that did
not support removal to federal court because the statute did not implicate an equal rights issue).
Accordingly, Petitioner is not entitled to relief based on this claim.

### d.  The Trial Court's decision not to conduct a *Wade* hearing

Petitioner claims that his constitutional rights were violated by the Trial Court's failure to
conduct a *Wade* hearing regarding the identification testimony of Curtis Ericsson, the victim in
the December 18, 2000 robbery for which the jury convicted Petitioner. (Pet. 8.) Petitioner

---

[12]  In *Linnen v. Poole*, the court held that a claim is cognizable on federal habeas review
if it alleges that New York County Law § 722 by its terms compels federal constitutional
violations. 766 F. Supp. 2d 427, 467 (W.D.N.Y. 2011) (denying New York County Law § 722
claim for lack of prejudice or deficient performance where the petitioner claimed that he "was
denied his state and Federal constitutional rights to a fair trial, effective assistance of counsel,
due process and equal protection of law by the unconstitutional pay structure of the assigned-
counsel program, as it existed under [New York] County Law 722"). Petitioner makes no such
claim; he contends only that courts improperly applied New York County Law § 722. (Pet. 8.)

raises this claim in its own right (rather than as evidence of ineffective assistance of counsel) for the first time in his habeas petition.  Because Petitioner failed to properly present this claim to the state courts and no longer has any available opportunity to do so, this claim is exhausted but procedurally defaulted.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court."  *Davila*, 582 U.S. ---, 137 S. Ct. at 2064; *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief.").  "This requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'"  *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).  To prevent a habeas petitioner from exhausting his claims by simply letting the time run on state remedies, the Supreme Court "crafted a separate waiver rule — or as it is now commonly known — the procedural default doctrine."  *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 853 (1999) (Stevens, J., dissenting)).  That rule provides that if a habeas petitioner has failed to properly present his or her claims to the appropriate state court but "has no further state avenues in which to press this issue," perhaps because the petitioner was required but failed to raise the claim at an earlier opportunity and that opportunity has now passed, courts will "deem th[e] issue exhausted but procedurally defaulted."  *Jackson*, 763 F.3d at 143–44.

Petitioner did not present his claim to the state courts.  In addition, Petitioner no longer has a state court avenue through which to pursue this claim because he was required to bring the claim on direct appeal, did not do so, and is not entitled to a second direct appeal under New

York law.  *See* N.Y. Court Rules § 500.20; *Harris v. Fischer*, 438 F. App'x 11, 13 (2d Cir. 2011)

("In New York, a defendant seeking further appeal in a criminal case must apply for leave to

appeal by letter application to the Court of Appeals.").

    Nor can Petitioner seek collateral review by bringing a fifth 440 motion, as his *Wade*

hearing claim is a matter of record that could have been raised on direct appeal and therefore

cannot be brought in a motion for post-conviction relief.  There is nothing in the record to

demonstrate that Petitioner moved for a *Wade* hearing to suppress Ericsson's identification

testimony, nor did he object to or move to preclude Ericsson's in-court identification.[13]  (Tr.

356:16–357:6.)  While New York state law provides for collateral review of a conviction under

New York Criminal Procedure Law § 440.10, such review is not available if the claim could

have been raised on direct review.  *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (providing that the

court must deny a motion to vacate a judgment when sufficient facts appear on the record to have

permitted adequate review of the issue on appeal and the petitioner unjustifiably failed to raise

the issue on direct review); *see also Jackson*, 763 F.3d at 143–44 (holding that a petitioner's

claim was exhausted but procedurally defaulted because the claim could have been raised on

direct appeal (citing § 440.10(2)(c))); *Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991)

(holding claim to be procedurally defaulted where petitioner no longer had "remedies available"

in the New York state courts).

    Because Petitioner has already made one direct appeal to the Appellate Division and an

application for leave to appeal to the New York Court of Appeals, Petitioner can no longer seek

---

[13]  Respondent's memorandum of law explains that "[P]etitioner challenged the admissibility of the identification testimony of another witness, Vinicio Zuniga.  Yet, at that hearing, [P]etitioner made no application to suppress Ericsson's identification testimony." (Resp't Answer 11, Docket Entry No. 7.)

direct review from the Court of Appeals and is now foreclosed from any further review in state court. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (noting that federal habeas courts must also deem the claims procedurally defaulted when "petitioner failed to exhaust state remedies and the court to which he would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"); *Kotler v. Woods*, 620 F. Supp. 2d 366, 389–90 (E.D.N.Y. 2009) ("[F]urther direct review by the Court of Appeals is no longer available, and the failure to have raised this claim on direct review now forecloses further collateral review in state court." (quoting *Solomon v. Greene*, No. 05-CV-10894, 2008 WL 2018207, at *5 (S.D.N.Y. May 7, 2008))). Because this claim is exhausted but procedurally defaulted, this Court may not grant relief based on Petitioner's *Wade* claim. *See Grey*, 933 F.2d at 119–21.

### e.   Ineffective assistance of Trial Counsel

Petitioner argues that he was denied the effective assistance of Trial Counsel based on (1) Trial Counsel's failure to file a notice of alibi and (2) Trial Counsel's failure to demand that the prosecution conduct a line-up identification. (Pet. 10.)

In denying Petitioner's claim of ineffective assistance of counsel on direct appeal, the Appellate Division stated that "[i]nsofar as we are able to review [Petitioner's] claims of ineffective assistance of counsel, [Petitioner] was provided meaningful representation." *Coleman*, 829 N.Y.S.2d at 201. In addition, in reviewing the lower court's denial of Petitioner's First 440 Motion without conducting a hearing, the Appellate Division held that Petitioner's "claims of ineffective assistance of counsel were largely based on unsubstantiated, conclusory allegations, and thus, [Petitioner's] motion pursuant to CPL 440.10 was properly denied without a hearing." *Coleman*, 827 N.Y.S.2d at 878–79.

19

After careful review of the record, the Court cannot find that the Appellate Division unreasonably applied clearly established Supreme Court precedent or unreasonably determined the facts when it decided that Petitioner did not suffer ineffective assistance of counsel.

"The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'" *Buck v. Davis*, 580 U.S. ---, ---, 137 S. Ct. 759, 775 (Feb. 22, 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121 (2011). "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice." *Id.* (citing *Strickland*, 466 U.S. at 687); *see also Sexton v. Beaudreaux*, 585 U.S. ---, ---, 138 S. Ct. 2555, 2558 (June 28, 2018) (per curiam) ("To prove ineffective assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice." (citing *Strickland*, 466 U.S. at 687)). "Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen*, 563 U.S. at 189 (alteration in original) (quoting *Strickland*, 466 U.S. at 690); *see also Bierenbaum v. Graham*, 607 F.3d 36, 50 (2d Cir. 2010) (stating that the *Strickland* standard is "highly deferential" to eliminate the "distorting effects of hindsight" (quoting *Strickland*, 466 U.S. at 689)). While it is possible that, in certain instances, even "an isolated error" can support an ineffective assistance claim, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Harrington*, 562 U.S. at 111.

The "highly deferential" *Strickland* standard is made "doubly so" on habeas review, as AEDPA requires deference to the state court's ruling. *Premo*, 562 U.S. at 122; *accord Santone v.*

*Fischer*, 689 F.3d 138, 154 (2d Cir. 2012).  Thus, on habeas review, "the question is not whether counsel's actions were reasonable . . . [but] whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Richter*, 562 U.S. at 105.  "Surmounting *Strickland*'s high bar is never an easy task."  *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

### i.   Failure to file a notice of alibi

In order to prevail on his ineffective assistance claim based on Trial Counsel's failure to file an alibi notice, Petitioner must show that the Appellate Division unreasonably determined that Petitioner had not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  The Court cannot conclude that the Appellate Division unreasonably denied Petitioner's ineffective assistance claim.  As to the first prong of *Strickland*, the Appellate Division did not unreasonably determine that Petitioner failed to show "that there were no strategic or other legitimate explanations for [Trial] [C]ounsel's decision."  *Coleman*, 829 N.Y.S.2d at 201.

In order to call an alibi witness at trial, New York law requires counsel to serve a notice of alibi "reciting (a) the place or places where the defendant claims to have been at the time in question, and (b) the names, the residential addresses, the places of employment and the addresses thereof of every such alibi witness upon whom he intends to rely."  N.Y. Crim. Proc. Law § 250.20; *People v. Green*, 890 N.Y.S.2d 65, 69 (App. Div. 2009).

Before Nicole Hackett was called as a witness, Trial Counsel was asked for an offer of proof as to Hackett's testimony.  (Tr. 657:3–5.)  Counsel stated that her testimony would be for the purpose of demonstrating that the person the prosecution claimed was Petitioner in a

21

surveillance photograph was not in fact Petitioner.  (*Id.* at 657:5–16.)  The Trial Court agreed

that Hackett could offer such testimony but admonished that Hackett could not "get into where

[Petitioner] was that night, unless she was with him."  (*Id.* at 657:17–24.)  The Trial Court then

asked Trial Counsel if he had served a notice of alibi and Trial Counsel responded, "No your

honor."  (*Id.* at 657:23–658:3.)

The record reveals that Hackett wanted to offer alibi testimony in support of Petitioner.[14]

Hackett testified before the grand jury that she assumed she had been with Petitioner on the day

of the crime, stating, "that day evidently we had to be together at some point in time because I

never called him or he never called me which proves that we were together."  (State Ct. R. ("GJ

Test.") 3:18–22, Docket Entry No. 21.)[15]  Despite Hackett's assertions and the circumstantial

evidence she offered, she would not have been a reliable or credible alibi witness in view of her

grand jury testimony, the most problematic portion of which reads:

> Q:   Do you have an independent recollection of being with him?
>
> A:   On the 18th, honestly we are together every day because we
>       live together.  We are together.  But there wasn't an incident
>       that made me want to point out what was so special on the
>       18th and 19th.  Like I said, we were together every day.  We
>       live together.

(*Id.* at 4:7–15.)  Although Hackett wished to testify that Petitioner was in New Jersey with her on

the 18th, Hackett had no independent recollection of where she or Petitioner were at the time of

the commission of the crime.  (*Id.* at 4:7–15; First 440 Motion 20.)  Therefore, any alibi notice

---

[14]  In a sworn affidavit in support of Petitioner's First 440 Motion, Hackett stated, "At
trial I was informed that I could not testify that [Petitioner] was in Jersey with me on the 18th.  I
asked why, and was told something concerning it not being allowed.  I explained that I testified
at the grand jury and preliminary hearings to the same facts but I was still denied."  (First 440
Motion 20.)

[15]  The Court refers to the page numbers assigned by the electronic filing system.

would have been deficient under state law.  *See* N.Y. Crim. Proc. Law § 250.50; *People v. Angona*, 989 N.Y.S.2d 746, 749 (App. Div. 2014) (finding a request to file a late notice of alibi "substantively inadequate because it failed to identify the place or places where defendant claims to have been at the time in question, and the names, the residential addresses, the places of employment, and the addresses thereof of every alibi witness upon whom he intended to rely"); *People v. Mensche*, 714 N.Y.S.2d 377, 380 (App. Div. 2000) (affirming a finding of the county court that the alibi notice was "facially inadequate because it failed to advise the People of the places at which defendant claimed to be at the time of the commission of the crimes").  Because Hackett's insufficiently precise proposed testimony would not have allowed Trial Counsel to put forward a facially sufficient alibi notice, the Appellate Division did not unreasonably determine that Trial Counsel's decision not to call Hackett as an alibi witness was objectively reasonable. Petitioner is therefore not entitled to habeas relief on this ground.

### ii.    Failure to demand a line-up identification

Petitioner argues that he is entitled to federal habeas relief because Trial Counsel failed to pursue a line-up identification.  (Pet. 10.)  The Court disagrees because Petitioner cannot show that Trial Counsel's failure, even if deficient, prejudiced him.

As an initial matter, Respondent contends that Petitioner failed to properly present this claim to all appropriate state courts.[16]  *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . , thereby alerting that court to the federal nature of the claim."

---

[16]  Respondent also contends that the claim is procedurally defaulted as a consequence — that is, the claim is "exhausted but procedurally defaulted." *Jackson v. Conway*, 763 F.3d 115, 143–44 (2d Cir. 2014).  Because this claim fails on its merits, the Court declines to address the alleged procedural default.  *See Mannix v. Phillips*, 619 F.3d 187, 196 (2d Cir. 2010).

(quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam))).  Assuming without deciding that Petitioner failed to properly exhaust this claim by presenting it to all appropriate state courts, the Court nevertheless chooses to adjudicate the claim.  *See* 42 U.S.C. § 2254(b)(1). Because the Court assumes this claim is unexhausted, the Court applies *de novo* review.  *See Medina v. Gonyea*, 111 F. Supp. 3d 225, 236 (E.D.N.Y. 2015).  However, even applying *de novo* review, the Court cannot grant Petitioner habeas relief on this claim.

"To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show . . . that his counsel's deficient performance prejudiced him" — that is, "a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Andrus v. Texas*, 590 U.S. ---, ---, 140 S. Ct. 1875, 1881 (June 15, 2020) (quoting *Strickland*, 466 U.S. at 694). Assuming without deciding that Trial Counsel's failure to request a line-up constituted deficient performance, there is no reasonable probability that the result of the proceeding would have been different.  In fact, had Trial Counsel requested a line-up, the result of the proceeding would have been the same — because Petitioner himself made a *pro se* request for a line-up, which (as Petitioner explains) the Trial Court granted.  (Pet. 10; First 440 Motion 6, 52–53.)  Petitioner cannot be prejudiced by Trial Counsel's failure to request a line-up when the Trial Court in fact ordered a line-up.  *Cf. Kurniawan v. United States*, Nos. 17-CV-2493, 12-CR-376, 2017 WL 4736718, at *4 (S.D.N.Y. Sept. 18, 2017) ("Counsel cannot be ineffective for failing to raise [an] issue[] he did in fact raise . . . ." (alterations in original) (quoting *Narvaez v. United States*, No. 95-CR-941, 2003 WL 21749638, at *6 (S.D.N.Y. July 29, 2003))); *Parker v. Ercole*, 582 F. Supp. 2d 273, 300 (N.D.N.Y. 2008) ("Counsel cannot be ineffective for raising the very arguments petitioner claims he omitted.").  Because Petitioner received the relief he would have

24

received had Trial Counsel made the application, Petitioner cannot show prejudice by Trial

Counsel's failure to make the application.  *See United States v. Levy*, 694 F. Supp. 1136, 1146

(D.N.J. 1988) (explaining when denying a motion for a new trial that "[it] is . . . difficult to see

how defendants were significantly prejudiced when they, in essence, got what they wanted").

This claim does not entitle Petitioner to federal habeas relief.

## III.   Certificate of appealability

Having denied the petition for a writ of habeas corpus, the Court issues a certificate of

appealability for Petitioner's first claim (choice of counsel), third claim (*Wade* hearing), and the

first part of his fourth claim (ineffective assistance concerning alibi testimony) but denies a

certificate of appealability for Petitioner's second claim (New York County Law § 722) and the

second part of his fourth claim (ineffective assistance concerning the line-up).

"The district court must issue or deny a certificate of appealability when it enters a final

order adverse to the applicant."  Rule 11(a) Gov'g Sec. 2254 Cases in the U.S. Dist. Cts.  The

court must issue a certificate of appealability "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This means that a

habeas petitioner must demonstrate "that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*,

529 U.S. 473, 475 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

"This threshold question should be decided without 'full consideration of the factual or

legal bases adduced in support of the claims.'"  *Buck*, 580 U.S. at ---, 137 S. Ct. at 773 (quoting

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).  "Obtaining a certificate of appealability 'does

not require a showing that the appeal will succeed,' and "[courts] should not decline the

application . . . merely because [they] believe[] the applicant will not demonstrate an entitlement to relief." *Welch v. United States*, 578 U.S. ---, ---, 136 S. Ct. 1257, 1263–64 (Apr. 18, 2016) (quoting *Miller-El*, 537 U.S. at 337).  In fact, a certificate of appealability may issue even if "every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that petitioner will not prevail." *Buck*, 580 U.S. at ---, 137 S. Ct. at 774 (quoting *Miller-El*, 537 U.S. at 338).

The Court grants a certificate of appealability for Petitioner's first and third claims (choice of counsel and *Wade* hearing, respectively).  In the state court post-conviction proceedings to which Petitioner has been a party, he has authored a host of *pro se* filings and has had counsel author several others.  Many of these filings contain similar yet distinct claims with overlapping factual and legal foundations.  The Court's difficulty distinguishing between claims is compounded by the fact that Petitioner's *pro se* filings — while more than reasonable for an incarcerated, *pro se* litigant — are not detailed with the precision the Court expects of filings authored by attorneys.  Given the sometimes-blurred lines between claims, reasonable jurists could disagree about the nature and scope of the claims Petitioner has brought across his one direct appeal, two *coram nobis* petitions, four Article 440 motions, and one federal habeas petition.  The nature and scope of Petitioner's claims are critical to the Court's determination that the choice-of-counsel and *Wade* hearing claims are procedurally defaulted.  While it does not appear that any judge would disagree with the Court's conclusions in this Memorandum and Order, reasonable jurists could at least debate exactly what Petitioner argued in each of his filings and could therefore debate whether the claims he brings in this federal habeas petition are procedurally defaulted.  Accordingly, a certificate of appealability is appropriate.

For different reasons, the Court also issues a certificate of appealability for the first part of Petitioner's fourth claim (ineffective assistance of counsel for failure to present alibi testimony).  Adjudicating a claim of ineffective assistance necessarily requires complex judgments about the reasonableness of counsel's actions in light of all the facts.  These claims are not amenable to hard-and-fast conclusions but instead require a searching inquiry into the circumstances.  Given the fungible and imprecise "reasonableness" standard of *Strickland*'s first prong, the Court believes that reasonable jurists could at least debate Petitioner's claim concerning Trial Counsel's failure to present alibi testimony.  Given the high bar for success on *Strickland* claims, compounded by the high bar for a federal habeas court to overturn a state court's adjudication of a *Strickland* claim on its merits, the Court expects that all reasonable jurists would eventually reach the same conclusion as the Court, but because the claim is "debatable," the Court must issue a certificate of appealability.  *See Buck*, 580 U.S. at ---, 137 S. Ct. at 774; *Waiters v. Lee*, No. 13-CV-3636, 2020 WL 3432638, at *14 (E.D.N.Y. June 23, 2020).

The Court does not issue a certificate of appealability for the second part of Petitioner's fourth claim, concerning Trial Counsel's failure to request a line-up.  As Petitioner explains in his petition, the Trial Court granted his *pro se* request for a line-up notwithstanding Trial Counsel's failure to request one.  To succeed on this *Strickland* claim, Petitioner must show that Trial Counsel's failure prejudiced him in some way; however, it is axiomatic that Petitioner cannot be prejudiced by getting exactly what he wanted.  No reasonable jurist would debate this proposition.  Accordingly, a certificate of appealability is not appropriate.

The Court likewise denies a certificate of appealability for Petitioner's second claim concerning New York County Law § 722.  This claim is grounded in state law — indeed, Petitioner cites the specific state law at issue — not federal law.  State law claims are not

cognizable on federal habeas review.  No reasonable jurist would debate whether this Court may grant federal habeas relief on the basis of this state law claim, making a certificate of appealability inappropriate.

**IV.  Conclusion**

For the foregoing reasons, the Court denies the petition for a writ of habeas corpus.  The Court issues a certificate of appealability for Petitioner's first claim (choice of counsel), third claim (*Wade* hearing), and the first part of his fourth claim (ineffective assistance concerning alibi testimony) but denies a certificate of appealability for Petitioner's second claim (New York County Law § 722) and the second part of his fourth claim (ineffective assistance concerning the line-up).  The Clerk of Court is directed to enter judgment and close this case.

Dated: November 19, 2020
       Brooklyn, New York

SO ORDERED:

s/ MKB

_____
MARGO K. BRODIE
United States District Judge